O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAREN BETH DREXLER,<br><br>         Plaintiff,<br><br>vs.<br><br>NANCY BERRYHILL, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No. 8:17-CV-01041 (VEB)<br><br>DECISION AND ORDER |

## I. INTRODUCTION

In April of 2013, Plaintiff Karen Beth Drexler applied for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. The Commissioner of Social Security denied the applications.

1

Plaintiff, by and through her attorneys, Potter Cohen & Samulon, Rebecca C. Padilla, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 11, 12, 22). On April 11, 2018, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 22).

## II. BACKGROUND

Plaintiff applied for benefits on April 24, 2013, alleging disability beginning May 1, 2008. (T at 254-60, 279).[1] The application for SSI benefits was denied for excess resources. (T at 103-112). The DIB application was medically reviewed and then denied initially and on reconsideration. (T at 113-17, 124-26). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On May 3, 2016, a hearing was held before ALJ Joseph P. Lisiecki, III. (T at 69). Plaintiff appeared with a non-attorney representative and testified. (T at 80-83). The ALJ also received testimony from Dr. Arnold Ostrow, a medical expert (T at 78-80). A subsequent hearing was held on October 13, 2016. (T at 48). Plaintiff appeared again with a non-attorney representative and testified. (T at 59-63). The

---

[1] Citations to ("T") refer to the administrative record transcript at Docket No. 16.

2

DECISION AND ORDER – DREXLER v BERRYHILL 8:17-CV-01041-VEB

ALJ also received testimony from Dr. Kent Layton, a medical expert (T at 55-59) and Victoria Rei, a vocational expert. (T at 63-66).

On November 15, 2016, the ALJ issued a written decision denying the application for benefits. (T at 22-47). The ALJ's decision became the Commissioner's final decision on April 17, 2017, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

On June 15, 2017, Plaintiff, acting by and through her counsel, filed this action seeking judicial review of the Commissioner's denial of benefits. (Docket No. 1). The Commissioner interposed an Answer on November 6, 2017. (Docket No. 15). The parties filed a Joint Stipulation on April 6, 2018. (Docket No. 21).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision must be affirmed and this case be dismissed.

### III. DISCUSSION

A.  **Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot, considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s) with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful

activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.     Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the

decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**C.     Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2008, the alleged onset date, and met the insured status requirements of the Social Security Act through March 31, 2010 (the "date last insured"). (T at 27). The ALJ found that, as of the date last insured, Plaintiff's degenerative arthritis of the right hip, diabetes mellitus, obesity, post-traumatic

stress disorder, depression, and anxiety were "severe" impairments under the Act. (Tr. 28).

However, the ALJ concluded that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 28).

The ALJ determined that, as of the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work, as defined in 20 CFR § 404.1567 (b), as follows: she can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; she can stand and walk with normal breaks for 6 hours in an 8-hour workday; she can sit with normal breaks for 6 hours in an 8-hour workday; she can occasionally use foot pedals on the right side; she can perform occasional postural activities, with no climbing of ladders, ropes, or scaffolds and no crouching, kneeling, or crawling; she cannot work at unprotected heights or around moving machinery; she can occasionally drive motor vehicles and work in extremes of temperature and vibration; she is limited to simple tasks that are object oriented and involve no work with the general public. (T at 34).

The ALJ found that, as of the date last insured, Plaintiff could not perform her past relevant work as a registered nurse. (T at 38). However, considering Plaintiff's age (49 years old on the date last insured), education (at least high school), work

experience, and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff could perform as of the date last insured. (T at 39).

Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act between May 1, 2008 (the alleged onset date) and March 31, 2010 (the date last insured) and was therefore not entitled to benefits. (T at 40). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

**D.    Disputed Issues**

As set forth in the Joint Stipulation (Docket No. 21, at p. 4), Plaintiff offers a single argument in support of her claim that the Commissioner's decision should be reversed. Plaintiff contends that the ALJ did not properly assess the medical opinion evidence regarding her mental health impairments.

**IV. ANALYSIS**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The courts have recognized several types of evidence that may constitute a specific, legitimate reason for discounting a treating or examining physician's medical opinion. For example, an opinion may be discounted if it is contradicted by the medical evidence, inconsistent with a conservative treatment history, and/or is based primarily upon the claimant's subjective complaints, as opposed to clinical findings and objective observations. *See Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

In this case, Dr. Kent Layton, a non-examining physician, testified as a medical expert at the second administrative hearing. Dr. Layton opined that it would be "reasonable" to conclude that Plaintiff was disabled in 2010, prior to the date last insured. (T at 57). Dr. Layton relied primarily upon a May 2016 letter from Shelley Ratterman (discussed below), a mental health counselor who treated Plaintiff prior to the date last insured. (T at 57-58). Dr. Layton opined that prior to the date last insured Plaintiff met the Listings requirements for § 12.04 and 12.06 due to moderate limitation in activities of daily living, marked limitation with respect to social skills, and marked impairment as to maintaining concentration, persistence, and pace. (T at 59). Dr. Layton conceded, however, that it was "not an easy record," given the paucity of evidence that post-dated the alleged onset date, but pre-dated the date last insured. (T at 59).

In May of 2016, Shelley Ratterman, LCSW, submitted a letter in support of Plaintiff's application for benefits. Ms. Ratterman explained that she treated Plaintiff from June of 2005 to September of 2008. According to Ms. Ratterman, Plaintiff suffered from post-traumatic stress disorder and major depressive disorder, recurrent, severe. (T at 614). Ms. Ratterman opined that, during the time period when she treated Plaintiff, Plaintiff was not "capable of sustaining employment successfully." (T at 615). Ms. Ratterman explained that Plaintiff's mental health

issues caused her to "be at a chronically low level of daily functioning," with limitations as to her cognitive, emotional, and social/relational skills. (T at 615). Ms. Ratterman further stated that it was her understanding that Plaintiff's condition had "deteriorated further" since she ended treatment in September of 2008. (T at 615).

Ms. Ratterman provided extensive treatment notes, most of which pre-dated the alleged onset date, but which documented ongoing complaints of, and treatment for, significant psychiatric symptoms, including mania, hyperarousal, difficulty leaving the home, struggles with basic hygiene, depression, and anxiety. (T at 540-41, 620, 626, 629, 637, 640-42, 646). Plaintiff's treatment with Ms. Ratterman ended due to Plaintiff's inability to afford treatment. (T at 615).

The ALJ afforded little weight to Dr. Layton's opinion, finding it "not consistent with the record as a whole, including [Plaintiff's] ADLs such as a January 2010 note that reported [Plaintiff] recently traveled to Israel and backpacked for two months." (T at 38).

As a threshold matter, it must be noted that resolution of this matter is made difficult because there is limited evidence from the period between the alleged onset date of May 1, 2008, and the date last insured, March 31, 2010. As Dr. Layton noted, it is "not an easy record." (T at 59). In addition, the assessments of Dr.

Layton, a recognized expert, and Ms. Ratterman, a mental health professional who had a long treatment history with Plaintiff, cannot be lightly disregarded.

With that said, this Court must be mindful of its role in this process. It is the Commissioner's responsibility to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984).

In other words, even if this Court might find evidence sufficient to sustain a finding of disability, if there is other evidence in the record from which a reasonable person might reach the opposite conclusion, then this Court must sustain the Commissioner's decision. *See Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In addition, while benefits applications are non-adversarial in nature, Plaintiff does bear the burden of proof with regard to the nature and extent of her impairments during the relevant time period, including whether her impairments met or medically equaled a Listing-level impairment during that period. 20 C.F.R. § 416.926(b); *see also Webb v. Barnhart*, 433 F.3d 683, 690 (9th Cir. 2005)(claimant

seeking disability insurance benefits must establish disability prior to the date last insured).

Here, although it is a close question, there is sufficient evidence to sustain the ALJ's conclusion. Records from the summer of 2008, at the very outset of the relevant time period, documented improved symptoms. (T at 648-49). In September of 2008, Ms. Ratterman completed a mental health assessment and assigned a Global Assessment of Functioning ("GAF") score[2] of 60 (T at 619), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Metcalfe v. Astrue*, No. EDCV 07-1039, 2008 US. Dist. LEXIS 83095, at *9 (Cal. CD Sep't 29, 2008).

During the period between her last session with Ms. Ratterman in September of 2008 and the date last insured, Plaintiff received no mental health treatment. Records from her treating physician, Dr. Craig Redfern, showed sporadic visits during the period, with no visits in 2009. Although Plaintiff complained of fatigue, sleep problems, anxiety, and depression (T at 480, 486-88, 489-92), Dr. Redfern's treatment related primarily to physical complaints, with no references to the sort of debilitating mental health symptoms one would expect to find if Plaintiff was

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

impaired to the extent assessed by Dr. Layton. In January of 2010, Plaintiff reported that she had traveled to Israel. (T at 493).[3] The record also indicated that, during the relevant time period, Plaintiff could attend to self-care with minimal limitation, perform basic chores, drive a vehicle, shop, prepare ready-to-eat meals, handle her finances, get along with family and friends, and travel. (T at 60, 311-16, 493).

Although Dr. Layton opined that Plaintiff was disabled, the ultimate disability determination is reserved to the Commissioner. *See* 20 CFR § 404.1527 (d)(2) & (3). Moreover, the ALJ reasonably discounted Dr. Layton's opinion as based too heavily on a single letter prepared by Ms. Ratterman more than seven (7) years after treatment ended and as being inconsistent with the treatment notes and Plaintiff's activities during the relevant time period. In addition, Ms. Ratterman only treated Plaintiff for a brief portion early in the relevant time period, and the treatment records from that window of time tend to show improvement and a moderation of symptoms. Lastly, as discussed above, Plaintiff saw her primary care physician

---

[3] The ALJ referred to this trip repeatedly in the decision, finding it inconsistent with the claims of disabling mental health limitations. (T at 28, 31, 32, 33, 37, 38). When discussing the trip, the ALJ characterized it as Plaintiff having "backpacked" for two months in Israel. In fact, Plaintiff told Dr. Redfern that she "went from couch potato to carrying [a] backpack." (T at 493). While the ALJ's phraseology suggests a more demanding physical and mental excursion than is perhaps supported by the record, the ALJ's underlying premise is sound, *i.e.* Plaintiff's ability to organize, manage, and execute an extended overseas trip could reasonably be viewed as a piece of evidence inconsistent with claims of disabling mental health impairments.

DECISION AND ORDER – DREXLER v BERRYHILL 8:17-CV-01041-VEB

during the relevant time period and the ALJ reasonably concluded that the treatment provided, activities reported, and symptoms noted were all inconsistent with the suggestion that Plaintiff suffered from disabling mental health impairments during this period. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)("Although [claimant] provided reasons for resisting treatment, … it was reasonable for the ALJ to conclude that the 'level or frequency of treatment [was] inconsistent with the level of complaints.'")(quoting SSR 96-7p).

In cases where, as here, "the evidence is susceptible to more than one rational interpretation, [this Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1110. As such, this Court finds the ALJ's decision must be sustained.

## V. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of the treating and examining medical providers and medical experts, and afforded the subjective claims of symptoms and limitations an

appropriate weight when rendering a decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED summary judgment and that Plaintiff's motion for judgment summary judgment is DENIED.

## VI. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered AFFIRMING the Commissioner's decision and DISMISSING this action, and it is further ORDERED that

The Clerk of the Court file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case.

DATED this 25th of September, 2018

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE